**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Wilson T.,[1]

Petitioner,

Case No. 26-cv-2981 (JWB/LIB)

v.

**REPORT AND RECOMMENDATION**

Todd Blanche, et al.,

Respondents.

Pursuant to a general referral made in accordance with 28 U.S.C. § 636 and Local Rule 72.1, this matter comes before the undersigned United States Magistrate Judge upon Petitioner Wilson T.'s Petition for a Writ of Habeas Corpus. [Docket No. 1]. Finding no hearing necessary, the Court issues the present Report and Recommendation.[2]

For the reasons discussed herein, the undersigned recommends that Petitioner Wilson T.'s Amended Petition for a Writ of Habeas Corpus, [Docket No. 6], be **GRANTED**, as set forth herein, and Respondents be ordered to release Petitioner within forty-eight hours of any Order adopting the present Report and Recommendation.

## I. Background

Petitioner is a native and citizen of Kenya and lawful permanent resident of the United

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in immigration opinions such as the present Report and Recommendation. See, e.g., Yee S. v. Bondi, No. 25-cv-2782 (JMB/DLM), 2025 WL 2879479, at *1 n.1 (D. Minn. Oct. 9, 2025); Sarail A. v. Bondi, No. 25-cv-2144 (ECT/JFD), 2025 WL 2533673, at *1 n.1 (D. Minn. Sept. 3, 2025). Accordingly, where the Court refers to Petitioner by his name, only his first name and last initial are provided.

[2] Upon review of the present record, the Court finds that a hearing is unnecessary in this action because the relevant facts are not in dispute and because a hearing on the Petitioner's claims would not aid the Court in its consideration of the present Petition. See, Lindner v. Wyrick, 644 F.2d 724, 729 (8th Cir. 1981) (observing the disposition of a habeas petition without an evidentiary hearing is proper when the dispute can be resolved on the basis of the record).

States. (Am. Pet. [Docket No. 6] at 2). Petitioner was admitted to the United States in New York, New York, on or about November 25, 2005, as a B-2 visitor, with authorization to remain in the United States for a temporary period not to exceed May 24, 2006. (Decl. of Geneva Sabin [Docket No. 12-1] ¶ 4). On or about April 15, 2014, Petitioner was granted adjustment of status to that of Lawful Permanent Resident. (Id. ¶ 5).

On February 4, 2016, Petitioner was convicted in Hennepin County for Fourth Degree Criminal Sexual Conduct, victim mental impaired/helpless, in violation of Minn. Stat. § 609.345. (Id. ¶ 6). On August 16, 2016, Department of Homeland Security (hereafter "DHS") initiated removal proceedings against Petitioner by filing and serving a Notice to Appear, Form I-862, alleging Petitioner's February 4, 2016, conviction constituted an aggravated felony under § 1227(a)(2)(A)(i). (Id. ¶ 7; Am. Reply [Docket No. 16] at 2). On December 9, 2016, an Immigration Judge sustained the charge and ordered Petitioner removed to Kenya. (Id. at 2).

On April 27, 2017, the Board of Immigration Appeals (hereafter "BIA") dismissed Petitioner's appeal. (Id.). On May 16, 2017, Petitioner filed a Petition for Review of his final removal order to the Eighth Circuit. (Id.); Tindi v. Sessions, No. 17-2086 (8th Cir. 2017). The Eighth Circuit stayed Petitioner's removal pending resolution of his Petition for Review. Tindi v. Sec'y, Dep't of Homeland Sec., 363 F. Supp. 3d 971, 975 (D. Minn. 2017), report and recommendation adopted, No. 17-cv-3663 (DSD/DTS), 2018 WL 704314 (D. Minn. Feb. 5, 2018). Petitioner's appeal was then stayed in its entirety pending the United States Supreme Court's ruling in Sessions v. Dimaya, 584 U.S. 148, 138 S. Ct. 1204, 200 L. Ed. 2d 549 (2018),[3] which was

[3] The issue before the Supreme Court in Sessions v. Dimaya, 584 U.S. 148, was "whether the definition of 'a crime of violence' in 18 U.S.C. § 16(b), as incorporated into the removal statute at issue in [Petitioner's] case, 8 U.S.C. § 1227(a)(2)(A)(iii), is unconstitutionally vague." Tindi, 363 F. Supp. 3d at 975.

argued on October 2, 2017. See, Tindi, No. 17-2086 (Order Jun. 1, 2017). The Supreme Court ultimately held that 18 U.S.C. § 16(b) is unconstitutionally vague. Sessions, 584 U.S. at 174, 175.

As such, on May 11, 2018, the Eighth Circuit vacated the BIAs' decision and remanded the matter for further proceedings in light of Sessions v. Dimaya, 584 U.S. 148. See, Tindi, No. 17-2086 (Judgment May 11, 2018). On July 17, 2018, the BIA terminated Petitioner's removal proceedings. (Am. Reply [Docket No. 16] at 2; Gov't.'s Ex. D [Docket No. 12-5] at 3).

On December 18, 2022, Petitioner was arrested for Third Degree Driving While Intoxicated in violation of Minn. Stat. § 169A.20, subdivision 2(1), and Careless Driving in violation of Minn. Stat. § 169.13, subdivision 2(a). (Decl. of Geneva Sabin [Docket No. 12-1] ¶ 8). On May 14, 2024, Petitioner was convicted of Careless Driving. (Id. ¶ 9).

On June 7, 2025, the Golden Valley Police Department arrested Petitioner for Third Degree Test Refusal in violation of Minn. Stat. § 169A.26, subdivision 1(b). (Id. ¶ 10). This charge remains pending. (Id.).

On August 25, 2025, Immigration and Customs Enforcement Supervisory Detention and Deportation Officer Nicholas Carey (hereafter "SDDO Carey") issued a Form I-200 Warrant for Arrest of Alien for Petitioner, "based on biometric confirmation of subject's identity and a records check to execute a charging document and initiate removal proceedings." (Id. ¶ 12; Gov't.'s Ex. A [Docket No. 12-2]).

On August 28, 2025, Petitioner pulled into his garage after arriving home around 7:00 a.m. (Am. Pet. [Docket No. 6] at 2). Immigration and Customs Enforcement (hereafter "ICE") agents promptly approached Petitioner's residence and asked him to step out of the vehicle. (Id.). The agents informed Petitioner that he was under arrest and placed him in handcuffs. (Id.). When

Petitioner inquired as to why he was being arrested, he was told he was "in violation of immigration law." (Id.).

Petitioner was subsequently transported to Fort Snelling where he was photographed, fingerprinted, and placed in a holding cell. (Id.). When Petitioner inquired as to what his immigration charge was, Petitioner alleges an ICE agent stated that DHS Office of Chief Counsel (hereafter "OCC") was still determining the specific charges. (Id.). Petitioner further alleges he was told he would be transported to Sherburne County Jail, and then transported back to Fort Snelling the following day, as the OCC had not yet determined Petitioner's immigration charges. (Id.). Petitioner was then transported to Sherburne County Jail. (Id.).

The following day, August 29, 2025, Petitioner was transported back to Fort Snelling and served with a Notice to Appear (hereafter "NTA"). (Id.). The NTA charged Petitioner as subject to removal from the United States under § 237(a)(1)(A) of the Immigration and Nationality Act (hereafter "INA") as an alien who at the time of adjustment of status was inadmissible under § 212(a)(6)(C)(i) of the INA, for willfully misrepresenting a material fact during his adjustment of status interview on March 6, 2014, by failing to disclose an arrest that occurred in May 2012, for which prosecution was declined. (Id. at 6).[4]

On September 22, 2025, an Immigration Judge sustained the charge and ordered Petitioner removed to Kenya. (Id.; Decl. of Geneva Sabin [Docket No. 12-1] ¶ 15). On October 10, 2025, Petitioner appealed his removal to the BIA. (Id. ¶ 16). This appeal remains pending. (Id.).

On June 16, 2026, Petitioner filed with this Court his Petition under 28 U.S.C. § 2241 for writ of habeas corpus challenging the constitutionality of his current detention by ICE at the Sherburne County Jail. (See, Pet. [Docket No. 1]). Petitioner filed an Amended Petition on June

[4] This is the extent of the information provided to the Court regarding this arrest and alleged misrepresentation. In fact, Petitioner is the only party to include any argument regarding the validity of this alleged misrepresentation.

22, 2026. (See, Am. Pet. [Docket No. 6]). Petitioner requests this Court order his immediate release and enjoin Respondents from re-detaining him on the same statutory basis. (See, Id.; Am. Reply [Docket No. 16] at 7).

## II. Discussion[5]

"Habeas is at its core a remedy for unlawful executive detention." Munaf v. Geren, 553 U.S. 674, 693 (2008). To ensure that remedy remains available, district courts have been vested with the authority to grant writs of habeas corpus to any individual who demonstrates that they are being subjected to custodial confinement in violation of the Constitution, federal law, or a treaty of the United States. See, e.g., Rasul v. Bush, 542 U.S. 466, 473 (2004); 28 U.S.C. §§ 2241(a), 2241(c)(3). The district court's habeas jurisdiction includes the authority to adjudicate habeas challenges to a noncitizen individual's immigration-related detention. See, e.g., Zadvydas v. Davis, 533 U.S. 678, 687–88 (2001). "Petitioner bears the burden of proving by a preponderance of the evidence that his detention is unlawful." Abel Jimenez Jimenez v. Samuel J. Olson, No. 25-cv-189 (CJW/KEM), 2025 WL 3633609, at *2 (N.D. Iowa Dec. 15, 2025) (citing Aditya W. H. v. Trump, 782 F. Supp. 3d 691, 702 (D. Minn. 2025); Walker v. Johnston, 312 U.S. 275, 286 (1941)).

Through the INA, Congress provided two mechanisms by which "it is appropriate to arrest an alien during the removal process." Arizona v. United States, 567 U.S. 387, 407 (2012).

[5] Two preliminary matters warrant brief discussion. Respondents assert the present Petition is procedurally defective, and, as such, must be denied, given (1) Wilson T. did not exhaust his administrative remedies because he has not requested a bond hearing; and (2) Wilson T. did not properly verify his Petition. (Answer [Docket No. 12] at 3–5). First, "[a]dministrative exhaustion [ ] does not pose a barrier to adjudicating [Petitioner's habeas] petition." Tanneh W.S. v. Blanche, 26-cv-2775 (LMP/EMB), ECF No. 8 at 4 fn. 4 (D. Minn. June 23, 2026) (citing Souleimane C. v. Blanche, No. 26-cv-2215 (LMP/JFD), 2026 WL 1180075, at *2 (D. Minn. Apr. 30, 2026)). Second, a lack of verification is not jurisdictional. See, Darby v. North Dakota, No. 1:11-cv-071, 2013 WL 542082, at *8 (D.N.D. Feb. 12, 2013), report and recommendation adopted sub nom. Darby v. Redmann, 2013 WL 1291625 (D.N.D. Mar. 26, 2013) (citing Hendricks v. Vasquez, 908 F.2d 490, 491 (9th Cir.1990)). Therefore, given Petitioner signed both the initial Petition, [Docket No. 1], and the Amended Petition, [Docket No. 6], and any lack of verification "will not substantively impact this court's decision," the Court will disregard Petitioner's noncompliance. Darby, 2013 WL 542082, at *8; see, Vu V. L. v. Mullin, No. 26-cv-2947 (LMP/JFD), 2026 WL 1893611, at *3 (D. Minn. July 1, 2026) (citing Quinn v. Dooley, 272 F. Supp. 2d 839, 845 (D.S.D. 2003) (holding that a court, "if it sees fit, may disregard" defects in the verification of a habeas petition)).

First, under 8 U.S.C. § 1226(a), "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a); see, Ahmed M. v. Bondi, No. 25-CV-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026) ("Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a).") (quotation omitted)). A Form I-200 is an administrative arrest warrant which authorizes a non-citizen's arrest if it is issued "[a]t the time of issuance of the [NTA], or at any time thereafter and up to the time removal proceedings are completed." 8 C.F.R. § 236.1(b). An NTA is the document which initiates removal proceedings. See, 8 CFR § 239.1. As such, DHS has the authority to arrest a non-citizen using a Form I-200 only if the Form I-200 issues at the same time or after DHS issues an NTA. See, 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(b)(1).

Second, under 8 U.S.C. § 1357(a), ICE is granted "limited authority" to make warrantless arrests. Arizona, 567 U.S. at 408. An immigration officer may arrest an alien without a warrant for being "'in the United States in violation of any [immigration] law or regulation,' . . . but only where the alien 'is likely to escape before a warrant can be obtained.'" Id. (quoting 8 U.S.C. § 1357(a)(2)) (first alteration in original).

In the present case, the Form I-200 is dated August 25, 2025. (See, Gov't.'s Ex. A [Docket No. 12-2]). The NTA, however, is dated August 29, 2025. (See, Gov't.'s Ex. B [Docket No. 12-3]). The sworn affidavit submitted by Respondents corroborates this timeline by affirmatively attesting that the Form I-200 was drafted and signed on August 25, 2025, four days before the NTA was issued on August 29, 2025. (Decl. of Geneva Sabin [Docket No. 12-1] ¶¶ 11, 14).

Accordingly, given the Form I-200 was issued four days before the issuance of the NTA, the Court necessarily finds that Petitioner was not arrested pursuant to a valid warrant under 8

U.S.C. § 1226(a).[6] See, e.g., Jesus F. D. v. Mullin, No. 26-cv-2486 (PJS/DTS), ECF No. 10 at 8 (D. Minn. June 10, 2026) (finding Form I-200 to be invalid when issued a day before issuance of the NTA); Gonzalez Ochoa v. McCleary, 816 F. Supp. 3d 921, 927–28, (S.D.Iowa 2026) (holding ICE lacked the authority to arrest petitioner relying on Form I-200 that issued before the NTA); Alberto C.M. v. Noem, 817 F. Supp. 3d 735, 739 (D. Minn. 2026); Jouquin C.S. v. Bondi, No. 26-cv-1438 (DWF/DJF), 2026 WL 483256, at *2–3 (D. Minn. Feb. 20, 2026); Marinero v. Bondi, No. 26-cv-1007 (JMG), 2026 WL 357653, at *1 (D. Minn. Feb. 9, 2026).[7]

The Court's inquiry does not end there. As previously noted, under 8 U.S.C. § 1357(a), ICE is granted "limited authority" to make warrantless arrests. Arizona, 567 U.S. at 408. Under § 1357(a)(2), an immigration official may conduct a warrantless arrest only "if he has reason to believe that the alien so arrested is in the United States in violation of any [immigration] law or regulation and is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2) (emphasis added). "The Eighth Circuit has construed the term 'reason to believe' in § 1357(a)(2) to mean 'constitutionally required probable cause.'" Luis A.S. v. Easterwood, No. 26-cv-2447 (PJS/DTS), ECF No. 9 at 9 (D. Minn. May 26, 2026) (citing United States v. Quintana, 623 F.3d 1237, 1239 (8th Cir. 2010)).

---

[6] Respondents do argue that the NTA was issued and served "nearly 48 hours," not four days, after the Form I-200 was "utilized. " (Answer [Docket No. 12] at 5). Respondents' timeline is correct in that the Form I-200 was not actually served on Petitioner until his arrest on August 28, 2025, three days after the warrant was drafted and signed. This, however, does not change the Court's analysis provided the NTA was still issued after the Form I-200 was drafted and signed, and after the it was served.

[7] As a final note on this issue, the Court disagrees with Respondents contention that "any such error" in the issuance of the Form I-200 and Petitioner's NTA "should be viewed as harmless procedural error" given "ICE/ERO could immediately issue a new warrant for arrest and rearrest." (Answer [Docket No. 12] at 5). As other courts in this District have continuously held, when the government fails to adhere to its own regulations, "the resulting detention is unlawful, and release is the appropriate remedy." Makitio G. A. v. Blanche, No. 26-cv-2200 (ECT/DLM), 2026 WL 1584457, at *6 (D. Minn. May 22, 2026), report and recommendation adopted sub nom. Makitio a. v. Blanche, 2026 WL 1591270 (D. Minn. June 3, 2026) (citing Vang v. Bondi, No. 26-cv-1381 (JMG/DLM), 2026 WL 458195, at *2 (D. Minn. Feb. 18, 2026) ("The government's failure to follow the regulations set forth in § 241.13 indicates an unlawful detention.") (collecting cases).

In the present case, the Form I-200 indicates the probable cause determination was premised on "the execution of a charging document to initiate removal proceedings against the subject," and "biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law[.]" (Gov't.'s Ex. A [Docket No. 12-2]). This basis for probable cause is corroborated through the sworn affidavit submitted by Respondents which states the Form I-200 was issued "based on biometric confirmation of subject's identity and a records check to execute a charging document and initiate removal proceedings." (Decl. of Geneva Sabin [Docket No. 12-1] ¶ 11).

First, SDDO Carey's assertion that ICE had probable cause to arrest Petitioner because of "the execution of a charging document to initiate removal proceedings against the subject" is categorically false. Respondents have clearly asserted that the charging document, i.e., the NTA, was not issued until four days after the issuance of the at-issue warrant. As such, this false statement could not have been the basis on which ICE established probable cause to arrest Petitioner. See, Yeleshev v. Larocco, No. 26-cv-2294-SJB, 2026 WL 1353806, at *4 (E.D.N.Y. May 14, 2026) ("Thus, at the time the arrest warrant was issued and signed by an ICE officer, no removal proceedings had been initiated. This purported basis for probable cause to arrest therefore rests on a false statement, and could not provide authority to arrest [Petitioner].").[8]

Second, as to whether "biometric confirmation" was a factor in establishing probable cause, it is, again, difficult to understand how probable cause could be premised on Petitioner's

[8] Respondents' reference to a "charging document" could, possibly, be related to Petitioner's previous August 16, 2016, NTA. Respondents, however, do not even attempt to assert this justification. Additionally, as previously noted, those removal proceedings were terminated by the BIA on July 17, 2018. (Am. Reply [Docket No. 16] at 2; Gov't.'s Ex. D [Docket No. 12-5] at 3).

biometric information when immigration officers would not have that information prior to Petitioner's arrest. See, e.g., Sergio F.M. v. Todd Blanche, et al., No. 26-cv-2749 (ECT/DTS), 2026 WL 1971992 (D. Minn. July 8, 2026) (citing Francisco M.A. v. Blanche, No. 26-cv-2032 (JRT/EMB), 2026 WL 1229701, at *2 (D. Minn. May 5, 2026) (". . . Petitioner's biometric information could have only been confirmed after Petitioner had been taken into ICE's custody.")); Jefferson G.H.L. v. Blanche, No. 26-cv-2344 (JRT/ECW), 2026 WL 1229623 (D. Minn. May 5, 2026) (same); Jhonny O.H.C. v. Bondi, No. 26-cv-1387 (JRT/DJF), 2026 WL 594077 (D. Minn. Mar. 3, 2026) (". . . the warrant states that the arrest was based on 'biometric confirmation of the subject's identity' . . . [an] event[ ] that necessarily would have occurred only after Petitioner was taken into custody."). As such, Respondent's assertion that confirmation of Petitioner's biometric information was a factor in establishing probable cause prior to his arrest is entirely unpersuasive.

Finally, there is no evidence on the record now before the Court to establish that ICE relied on Petitioner's past criminal charges as a basis for his arrest. The Respondents' sworn affidavit of Geneva Sabin, a DHS deportation officer who does not have personal knowledge of the drafting or issuance of the at issue warrant, simply cites to a list of Plaintiff's past offenses. (Decl. of Geneva Sabin [Docket No. 12-1] ¶¶ 6–10). Mr. Sabin, however, does not attest that the arresting ICE agents used their knowledge of these past offenses to form their basis for probable cause to arrest, nor does he allege that the agents were even aware of these past offenses at the time of Petitioner's arrest. (See, Decl. of Geneva Sabin [Docket No. 12-1]). Further, there is no reference to the belief that Petitioner was subject to removal from the United States under § 237(a)(1)(A) of the INA as an alien who at the time of adjustment of status was inadmissible under § 212(a)(6)(C)(i) of the INA, for willfully misrepresenting a material fact during his adjustment of

status interview on March 6, 2014, outside of the brief description included in Petitioner's NTA, which was, again, issued four days after the Form I-200. (See, Gov't.'s Ex. A [Docket No. 12-2]).

Even assuming, solely for the sake of this argument, that ICE had probable cause to believe Petitioner was unlawfully present in the United States, there is nothing in the record now before the Court to even insinuate Petitioner was a flight risk. As outlined in the Amended Petition, Petitioner is a lawful permanent resident who has resided in the United States for over twenty years. (Am. Pet. [Docket No. 6] at 5). Further, as Mr. Sabin attests, Petitioner was driving his own vehicle, and had just returned to his own residence, when he was arrested. (Decl. of Geneva Sabin [Docket No. 12-1] ¶ 12). Lastly, and most notably, Respondent does not even attempt to argue that Petitioner was a flight risk at the time he was detained. (See, Answer [Docket No. 12]).

In sum, even if the ICE agents had probable cause to believe that Petitioner was unlawfully present in the United States, the record now before the Court does not demonstrate, whatsoever, that Petitioner was likely to escape before a valid arrest warrant could be issued.

Accordingly, the undersigned recommends that Respondents be ordered to immediately release Petitioner following the issuance of any Order adopting the present Report and Recommendation, and the undersigned further recommends that Respondents be required to confirm Petitioner's release within forty-eight hours of any Order adopting this Report and Recommendation.[9] See, Pina C.D.B. v. Bondi, No. 26-cv-1929 (KMM/DJF), 2026 WL 810676, at *3 (D. Minn. Mar. 24, 2026) (concluding "immediate release is the proper remedy" for arrest effected in absence of valid administrative warrant); see also, Munaf, 553 U.S. at 693 (holding release is the "typical remedy" for unlawful executive detention).

[9] Because the Court concludes that Petitioner is entitled to relief on that basis, the Court does not address Petitioner's other arguments, including Petitioner's arguments relating to the validity of Petitioner's alleged misrepresentation of a material fact during his adjustment of status interview on March 6, 2014.

## III. Objection Period

The undersigned notes that one last issue merits discussion—the time in which the parties are permitted to object to the present Report and Recommendation, if they so choose. This Report and Recommendation is not an Order or judgment of the District Court, and it is, therefore, not appealable directly to the Eighth Circuit Court of Appeals. Instead, Local Rule 72.2(b)(1) provides that "[a] party may file and serve specific written objections to a magistrate judge's" Report and Recommendation, such as the present Report and Recommendation, "within 14 days after being served with a copy of the" Report and Recommendation, "unless the court sets a different deadline." LR 72.2(b)(1). A party may then respond to those objections within fourteen days after being served a copy of the objections. LR 72.2(b)(2). Thus, under normal circumstances a party would be permitted fourteen (14) days in which to file its objections to the present Report and Recommendation, if it chooses to object, and then the opposing party would be permitted an additional fourteen (14) days in which to file its response to said objection, if it so chooses.

In the present case, however, Petitioner's unlawful detention would be unnecessarily further prolonged by this objection period to the point that the time limit in which the undersigned recommends Petitioner be released would be doubled fourteen times over by the end of the standard objection period. Put differently, if the parties were permitted the full objection period, comprised of twenty-eight days, then the relief recommended by the undersigned would be materially diminished because Petitioner would have been unlawfully detained for an additional month or more.

Therefore, the Court, in its inherent power to manage pending litigation, reduces the time in which any party is permitted to object to the present Report and Recommendation to seven (7)

days, and corresponding, the Court reduces to seven (7) days the time in which any party is permitted to respond to any objection. An objection period of any longer duration would materially and unnecessarily undermine the recommended relief.

## IV. Conclusion

Therefore, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Wilson T.'s Amended Petition for a Writ of Habeas Corpus, [Docket No. 6], be **GRANTED in part**, as set forth herein;
2. Respondents be required to immediately release Petitioner from custody;
3. Respondents be required to confirm Petitioner's release from custody within forty-eight (48) hours from the date of any Order adopting the present Report and Recommendation; and
4. Respondents be precluded from re-detaining Petitioner under a statutory theory this Court has rejected in this proceeding absent materially changed circumstances.

Dated: July 30, 2026

s/Leo I. Brisbois
Hon. Leo I. Brisbois
U.S. MAGISTRATE JUDGE